1  AARON M. CLEFTON, Esq.  (SBN 318680)
2  PAUL L. REIN, Esq. (SBN 43053)
   REIN & CLEFTON, Attorneys at Law
3  200 Lakeside Drive, Suite A
   Oakland, CA  94612
4  Telephone:  510/832-5001
   Facsimile:  510/832-4787
5  info@reincleftonlaw.com

6  Attorneys for Plaintiff
   JOHN PENNINGTON

7
8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10
   JOHN PENNINGTON                    CASE NO.
11                                     Civil Rights
            Plaintiff,
12                                     **COMPLAINT FOR PRELIMINARY AND**
                                       **PERMANENT INJUNCTIVE RELIEF AND**
13                                     **DAMAGES:**
      v.
14                                        1. **Violations of Americans with**
                                             **Disabilities Act of 1990 (42 U.S.C. §**
15                                           **12101 *et seq.*)**

16 COSTCO WHOLESALE                       2. **Violation of the California Law**
   CORPORATION,                              **Including the Unruh Act, Cal. Civil**
17                                           **Code §§ 51 and 52 and the Americans**
                                             **with Disabilities Act as Incorporated by**
18          Defendant.                       **Cal. Civil Code § 51(f)**

19                                        3. **Violation of California Law Including**
                                             **The Unruh Act, Civil Code §§ 51 and 52**
20                                           **for Intentional Policy Discrimination**
                                             **and Conduct**
21
                                          4. **Violation of the California Disabled**
22                                           **Persons Act (Cal. Civil Code § 54 *et***
                                             ***seq.*)**
23

24                                     DEMAND FOR JURY TRIAL

25

26       Plaintiff JOHN PENNINGTON complains of Defendant COSTCO WHOLESALE

27 CORPORATION, and alleges as follows:

28

                                      1

1.     **INTRODUCTION:**  Defendant has permanently denied Plaintiff JOHN PENNINGTON, a person with a mobility disability, use of his assistive mobility device, a "Segway MiniPRO," in its warehouses.  Despite the fact that this is the *only* mobility device that enables Plaintiff to shop at Defendant's large warehouse stores, Defendant has indiscriminately banned *all* types of "Segways," even for disabled persons like Plaintiff whose disabilities prevents them from using other mobility devices which require sitting.   Defendant has done so as a matter of enforced, written Costco policy.  Such policy, when enforced against a disabled person using a "hands-free" Segway miniPRO, is directly contrary to Federal law pursuant to 28 CFR section 36.311(b)(1) that

> A public accommodation *shall make reasonable modifications in its policies, practices, or procedures to permit the use of other power-driven mobility devices* by individuals with mobility disabilities, unless the public accommodation can demonstrate that the class of other power-driven mobility devices *cannot* be operated in accordance with legitimate safety requirements that the public accommodation has adopted pursuant to § 36.301(b). (Emphasis added)

2.     After requiring Plaintiff to leave its Santa Cruz Warehouse on December 8, 2020, Defendant sent Plaintiff written notice on December 11, 2020, that he could never return to Costco so long as he used a "Segway" as his mobility device.  Defendant did not recognize that Plaintiff was using a particular type of "Segway," a "Segway miniPRO," specifically designed for control by feet and body movement which accommodates Plaintiff's particular physical disabilities. It is smaller than other Segways, and does not have hand controls that might interfere with the use of a shopping cart, or shopping generally.  This lawsuit seeks to protect Plaintiff's right to use his Segway miniPRO only, not other Segways, and to require Costco to modify its policies so that it does not discriminate against Plaintiff using his particular model of Segway, as required under existing law.

3.     Plaintiff can only walk short distances; otherwise his lower body and legs will begin to spasm and seize, potentially requiring emergency medical attention.  He cannot sit without pain unless in customized or specifically designed seats.  He cannot meaningfully use any other assistive device without pain or discomfort for mobility.  Defendant's ban on Plaintiff's mobility device is therefore a permanent ban on Plaintiff ever returning to this or any Costco

again, solely because he is disabled.  Plaintiff informed Defendant of all of this prior to filing this Complaint. Defendant defended the ban and maintains the policy to this day.

4.      In violation of ADA regulations, and Department of Justice regulations, Defendant has banned Plaintiff's "Segway miniPRO" mobility device without considering or analyzing, 1) its type, size, weight, dimensions, and speed of Plaintiff's particular Segway, the Segway miniPRO; 2) the variable volume of pedestrian traffic at the Santa Cruz Costco locations in question *at different times of day*, *week, month or year* (instead asserting an unspecified "average" volume per day); 3) the square footage of the warehouse, and aisle measurements and configuration, and 4) whether Defendant could adopt a safety policy that imposes reasonable limitations on use of Plaintiff's device that could protect other patrons while also reasonably accommodating Plaintiff to safely allow him to shop at the facilities.  28 CFR § 311 (b)(2). Moreover, in banning Plaintiff, Defendant stereotyped him, apparently confusing Plaintiff with another Segway user.  Two managers at the Santa Cruz Costco alleged they had previously encountered Plaintiff the week before the incident, but he had not been to that Costco in years. Defendant also impermissibly based its decision to ban Plaintiff's Segway miniPRO on speculation about "how it might be operated" by him, in violation of Department of Justice guidance on "other power-driven mobility devices," ("OPDMDs") like Plaintiff's Segway miniPRO. https://www.ada.gov/opdmd.htm ("Wheelchairs, Mobility Aids, and Other Power-Driven Mobility Devices").

5.      On December 8, 2020, Plaintiff attempted to go shopping at the Costco Wholesale store, located at 220 Sylvania Avenue, Santa Cruz, California, something he had done without incident dozens of times at Costco locations near his home in Campbell and in the greater San Jose area.  However, upon entering the store utilizing his Segway miniPRO at the Santa Cruz location, Plaintiff was immediately stopped at the door and refused entrance.  Defendant's employees informed him that he would not be allowed to use his mobility device in the store and, after arguing with him about his rights and questioning his status as a disabled person, "escorted" Plaintiff from the premises.

6.      As a result of Defendant's illegal acts, Plaintiff suffered denial of his civil rights

1   and suffered physical, mental and emotional damages.  Plaintiff enjoys shopping at Costco

2   Wholesale (the "Warehouse").  He intends to return to patronize Costco stores in the future but

3   cannot do so until Defendant makes the legally required reasonable policy accommodation of

4   allowing him to safely use his Segway miniPRO.  Such changes to its policies and practices

5   include necessary employee training and/or re-training. Plaintiff has brought this lawsuit to

6   require Defendant to accommodate him and change its discriminatory and illegal policies.

7   Plaintiff seeks to have Defendant compensate him for effectively banning him from all Costco

8   premises on the basis of his physical disability, despite his need of the use of his power-driven

9   mobility device in order to travel what would otherwise be minimal walking distances for able

10  bodied persons.  Finally, Plaintiff seeks an injunction to protect the rights of all disabled persons,

11  including Plaintiff, to use a "Segway miniPROs" at Costco Wholesale stores geographically

12  located in counties under this District Court's jurisdiction.[1]

13          7.      **JURISDICTION:**  This Court has federal question jurisdiction over this action

14  pursuant to 28 USC sections 1331 and 1343 for violations of the Americans with Disabilities Act

15  of 1990, 42 USC sections 12101 *et seq.* This Court has jurisdiction over the claims brought under

16  California law which arise from the same facts pursuant to 28 U.S.C. § 1367.

17          8.      **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is

18  proper because the real property which is the subject of this action is located in this district and

19  that Plaintiff's causes of action arose in this district.

20          9.      **INTRADISTRICT:**  This case should be assigned to the San Jose intradistrict

21  because the real property which is the subject of this action is located in this intradistrict and

22  Plaintiff's causes of action arose in this intradistrict.

23          10.     **PARTIES:**  Plaintiff John Pennington is a "qualified" physically disabled person.

24  He suffers from a left hip labral tear, severe degenerative disc disease at L3-L4, and results of

---

[1] There are multiple designs and models of Segways.  Plaintiff is only seeking relief for his
particular model, which allows him to safely push a shopping cart and select items with his hands
while maintaining standard safe operation of the device, which is controlled only with his legs
and balance.  Specifically, this lawsuit seeks a change in policy only as to Segways that do *not*
require use of hand controls, like Plaintiff's device.  Plaintiff does *not* seek relief in this lawsuit
for those models that require hand controls for safe operation, as explained further below.

4

1  prior cervical disc fusions.  Plaintiff's medical conditions affect both his ability to ambulate and

2  his ability to sit down.  He therefore cannot use a "standard" motorized wheelchair, or motorized

3  shopping cart.  He is unable to walk any significant distance without the risk of suffering severe

4  and painful muscle spasms in his hip that render him unable to ambulate or move his hip and legs

5  until the spasm releases.  Plaintiff also has difficulty sitting for any extended period of time

6  without experiencing hip spasms and acute pain.  He has had to seek out specialized seating in

7  both his vehicle and at his home in order to sit for any extended period of time.  Due to Plaintiff's

8  physical limitations he is unable to use a traditional assistive device, such as a wheelchair, for

9  ambulation.  In fact, it was difficult for him to find any mobility device which both allows him to

10  move freely without walking but also allows him to remain in a standing position.

11       11.     After a difficult search and discussions with his physician, Plaintiff began using a

12  "Segway miniPRO" for ambulation in 2017.  It opened new experiences in mobility for him, and

13  greatly improved his lifestyle.  The device allows him to move freely without walking while

14  remaining in a standing position, pain free.  Plaintiff's chosen OPDMD, the "Segway miniPRO,"

15  allows him to be independent in most tasks necessary for his daily life such as shopping.  Without

16  the mobility device he is unable to do anything that requires ambulation.  Plaintiff has been issued

17  a California state disability placard.

18       12.     Defendant COSTCO WHOLESALE CORPORATION ("Costco"), is and was at

19  all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject

20  business, property and building located at 220 Sylvania Avenue, Santa Cruz, California known as

21  "Costco."  It also owns and operates the Costco Warehouses at 6898 Raleigh Road, San Jose,

22  California; 5301 Almaden Expressway, San Jose, California; and 1601 Coleman Avenue, Santa

23  Clara, California which are closest Costco Warehouse stores to Plaintiff's home in Campbell,

24  California, and which Plaintiff frequents most often.  Costco's corporate revenue in 2019 has

25  been estimated at $152 billion. It boasts 105.5 million members as of 2020, and employs

26  approximately 273,000 workers throughout the United States.

27       13.     Each Costco is a place of "public accommodation" and a "business establishment"

28  subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7)(E) of

5

the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

14.     **FACTS ABOUT INCIDENT:**  On December 8, 2020, Plaintiff was visiting Santa Cruz with his girlfriend in order to take pictures of the ocean at sunset.  Late in the afternoon, the couple decided to go shopping at the Costco located at 220 Sylvania Avenue, Santa Cruz.  As is his general practice when he goes shopping at Costco or any other store, Plaintiff drove his car to Costco, parked his car in a designated accessible parking space, and retrieved his "Segway miniPRO" from the trunk of his car.  Plaintiff mounted his mobility device and rode it to the entrance of the Costco while his girlfriend walked beside him.

15.     As they approached the entrance, Plaintiff's girlfriend retrieved a cart and entered the store ahead of Plaintiff so that she could use the restroom.  Plaintiff attempted to go through the entrance to the Costco while riding on his Segway miniPRO.  However, as he was showing her his membership card, Defendant's employee stopped him before he could fully enter the store.  The employee checking membership cards at the door told Plaintiff that he was not allowed to ride his Segway inside of the Costco.  Plaintiff showed the employee the handicapped sticker on his Segway miniPRO indicating that he is disabled and uses the device as a mobility aid.[2]  The employee then asked Plaintiff to remain at the entrance until her manager arrived.  Below are photos of Plaintiff shopping at a different Costco on another date using a Costco shopping cart, and the disability sticker on Plaintiff's Segway miniPRO:

---

[2] "A public accommodation that permits the use of another power-driven mobility device by an individual with a mobility disability shall accept the presentation of a valid, State-issued disability parking placard or card, or State-issued proof of disability, as a credible assurance that the use of the other power-driven mobility device is for the individual´s mobility disability. In lieu of a valid, State-issued disability parking placard or card, or State-issued proof of disability, a public accommodation shall accept as a credible assurance a verbal representation, not contradicted by observable fact, that the other power-driven mobility device is being used for a mobility disability. A 'valid' disability placard or card is one that is presented by the individual to whom it was issued and is otherwise in compliance with the State of issuance's requirements for disability placards or cards."  28 CFR§ 36.311(c)(2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





16.     Plaintiff waited a few minutes, and then two managers arrived at the entrance to

7

speak with him.  One of the managers immediately began questioning Plaintiff, "Why are you here?"  The other then stated, "*We told you last week that you cannot ride that in the Store*!"  Plaintiff was taken aback and confused by the animosity of the confrontation because he had not been to the Santa Cruz Costco in many years.  In fact, he had not been there since before he began using his Segway miniPRO as a mobility device in 2017.  He certainly had not been at the Santa Cruz Costco the week before.

17.     Plaintiff informed the managers that he had not been in the Santa Cruz Costco the previous week, but they did not accept his information.  They continued to argue with Plaintiff about his alleged previous visit to the store.  One of the managers told Plaintiff that he was positive that Plaintiff had been in the Santa Cruz Costco the prior week and that he had seen him walking without his Segway.

18.     Plaintiff attempted to explain to the managers that he is allowed to ride the Segway miniPRO as an assistive mobility device pursuant to the Americans with Disabilities Act and California disability access laws.  He told the manager about the Department of Justice regulations that allow him to do so.  Plaintiff also tried to explain that he used his Segway just as another person might use a wheelchair because he is unable to use a wheelchair as an assistive mobility device due to the nature of his disability.  At the same time that Plaintiff was trying to explain the law, one of managers began making comments about how Plaintiff did not "look disabled" and asking him what his disability is.

19.     Plaintiff felt like he was being unjustifiably interrogated, and became embarrassed.  He became upset and frustrated that he had to prove to the Costco managers, beyond his reasonable assurances and the disabled sticker on his Segway, that he was "disabled."  One of the Managers told Plaintiff that he would need to get off the Segway, put it in a cart, and take it back to his car.  Plaintiff told the managers that he was disabled and could not walk any significant distance without his Segway.  Then one of the managers goaded Plaintiff, asserting that the manager had seen him walking without his Segway previously.

20.     At this point, the other manager, whose name on information and belief is Jeremy, told Plaintiff that he would have to leave the store.  Plaintiff started to move toward the exit, and

the managers "escorted" him outside.  Plaintiff tried to use his mobile phone to pull up the www.ada.gov website that he could show the managers the ADA disability law information regarding use of OPDMDs in public accommodations, but he was unable to do so due to the poor internet connection.  Plaintiff became flustered as the managers continued to berate and humiliate him in public in front of other customers entering the Costco.

21.    One of the managers told Plaintiff that if he needed an accessibility device, he could ride the electric scooter provided for disabled persons by Costco.  Plaintiff again explained that his disability greatly impacted his ability to sit, which is why he uses a mobility device which allows him to stand up for ambulation.  The manager argued with Plaintiff that since Plaintiff had driven his car to the store he should be able to sit in a scooter provided by Costco.  He informed Plaintiff that if he wanted to enter the Costco he would need to use the store supplied mobility device.

22.    At this point Plaintiff became very upset, pushed to the limit of his tolerance for frustration and humiliation.  Plaintiff uttered an expletive when trying to explain the incredibly difficult process he had gone through to find the Segway miniPRO and a car that he could sit in for any extended length of time without pain.  Plaintiff told them that "being disabled is not as easy as sitting in a seat.  Not every disabled person is the same, and you cannot put everyone in the same ADA box!"

23.    Manager Jeremy then told Plaintiff that there was no way he would be allowed to enter the store after using profanity, and that he should go home.  Jeremy then threatened to "write him up" for his language and ban Plaintiff from the store.

24.    Plaintiff then asked the Manager Jeremy for his business card, and Jeremy gave him a post-it note with his first name written on it.  Plaintiff insisted on receiving an actual business card.  Manager Jeremy finally sent an employee to get a business card from his office for Plaintiff.  While they were waiting, Plaintiff was finally able to show the managers the portion of the ADA regulations relevant to OPDMDs on his cell phone screen, but the managers ignored him, saying that they could not "understand" the "legalese" Plaintiff showed them.  Plaintiff again threatened to report the managers to Costco corporate headquarters, but Manager Jeremy

1   responded that he did not care what Plaintiff reported because "I am the law here!"

2       25.    Finally, Plaintiff received Jeremy's business card, went back to his car, and sent a

3   message to his girlfriend to meet him there instead of inside the Costco Warehouse.  He was

4   thoroughly humiliated and upset about the treatment he had experienced from the Costco

5   managers and employees.  Plaintiff took contemporaneous notes of what occurred, and soon

6   thereafter sent a detailed email to Defendant reporting what had happened at the Santa Cruz

7   Costco.

8       26.    Plaintiff estimates that he has shopped dozens of times over the past four years at

9   other Costco Warehouses near his home in Campbell, California, without causing a single

10  incident, much less damage or injury to anyone or anything. Plaintiff is deterred from returning to

11  any Costco so long as Defendant asserts his "Segway miniPRO" is not allowed inside them.

12  Prior to the incident he was never informed there was a "policy" against using any Segways. On

13  information and belief, Costco tracks and verifies membership and purchases upon check out, and

14  these records will verify Plaintiff's estimate of his prior patronage of Costco Warehouses.

15  Furthermore, on information and belief, there are no incident reports of any kind regarding

16  Plaintiff at *any* Costco Warehouse, aside from the Santa Cruz location on the incident date in

17  question. On information and belief, these records show that Plaintiff has never had a single issue

18  at any Costco until the incident described in this Complaint, and at no time has he ever presented

19  a danger to himself or others, or to property, while using his "Segway miniPRO" in Costco.

20      27.    **COSTCO'S REPONSE TO PLAINTIFF'S PRE-LITIGATION**

21  **COMPLAINTS AND REQUEST FOR REASONABLE ACCOMMODATION:**  Plaintiff

22  expected that Defendant would respond to his complaint by following the law and allowing him

23  to return to the Santa Cruz Costco and other Costco Warehouses to shop while using his

24  OPDMD.  Defendant Costco headquarters did the opposite. It double downed, ratifying their

25  managers' discriminatory conduct as Costco corporate policy.  Costco's ratification, including the

26  December 11, 2020, letter described herein below shows a basis for an award of treble damages.

27  A copy of this letter is attached as Exhibit 1.

28      28.    On December 11, 2020, a Chicago legal counsel for Costco wrote to Plaintiff

10

stating that Costco would not allow him to use his Segway miniPRO as an OPDMD inside the Santa Cruz Warehouse, and impliedly any Costco at all.  In doing so, Defendant admitted to failing to properly evaluate whether Plaintiff's chosen OPDMD, the Segway miniPRO, *could* be safely operated within the Santa Cruz Costco Warehouse.  In the letter, Defendant listed some reasons it had considered in determining whether Plaintiff's OPDMD posed a safety threat. However, Defendant did not provide analysis of all the required factors outlined by ADA and California state requirements and regulations.  It did not consider *even the possibility* of how a safety policy for Segway use might allow Plaintiff to use his OPDMD. Nor did it explain why his particular model of Segway, the miniPRO, easily identifiable by its small size and lack of handle bars, cannot be operated in a safe manner within the Costco Warehouse with modifications to its policies.  In short, the letter gave specious reasons for its Segway ban, and its conclusions about Plaintiff and his assistive device, without considering alternatives.

29.    A public accommodation must allow use of an OPDMD "unless the public accommodation can demonstrate that the class of other power-driven mobility devices *cannot* be operated in accordance with legitimate safety requirements." 28 CFR section 36.311(b)(1).  The standard for exclusion of an OPDMD is therefore whether it *can* be operated safely *at all* in a public accommodation, *not whether it might be* operated in an unsafe manner.  Defendant never analyzed, considered, or offered any policy changes or reasonable accommodations or limitations that might allow a disabled person such as Plaintiff to safely use his Segway miniPRO inside Costco Warehouses.  On information and belief, Defendant did not analyze any solution whatsoever that would allow use of Plaintiff's Segway miniPRO beyond indiscriminately banning all Segway devices.  It did so as if all Segway devices are the same. They are not. Nor are all disabled individuals.

30.    As discussed in more detail below in the First Cause of Action, Defendant's letter denying Plaintiff access failed to make the required assessment of whether Plaintiff's particular OPDMD could be operated safely in the Costco Warehouse.  For example Defendant's letter was silent regarding the specific model of Segway that Plaintiff uses as an OPDMD.  It did not consider whether a policy could be amended to accommodate Plaintiff's personal disability.  The

letter did not mention the type, size, weight, dimension or the specific speed of Plaintiff's device. There was no discussion of the variable volume of pedestrian traffic at Costco on different days, weeks, months or years. For example, is Wednesday mid-morning traffic at a specific given Costco different than Saturday afternoon traffic? Is summer traffic different than the winter months? Are holidays more heavily trafficked than other times of year?  There was no discussion of the design or square footage of the warehouse (for example Costco's wide aisles compared with other grocery and retail stores), and there was also no analysis of whether Defendant could establish safety requirements that would permit safe operation of Plaintiff's OPDMD inside the Warehouse as a reasonable accommodation to Plaintiff's disability (for example requiring a speed limit, as the Federal Government has done to allow Segways in its buildings, including Federal Courthouses). See Federal Register, Vol. 73, No.4, p. 1223-1224, January 7, 2008 [GSA Bulletin FMR 2008-B3] "Interim Segway Personal Transporter Policy."

https://www.govinfo.gov/content/pkg/FR-2008-01-07/pdf/E7-25592.pdf ).[3]

31.     In the December 11, 2020, letter, Defendant identified the following factors that it had considered to support its conclusion that all Segways, apparently including the Segway miniPRO, could not operate safely within the Santa Cruz Costco Warehouse: 1) allegedly heavy pedestrian traffic at "virtually all times," an average of 8,600 shoppers per day; 2) the constant movement of forklifts, power-driven wheelchairs, and over-sized shopping carts inside the

[3] In Defendant's December 11, 2020, letter, it also threatened to revoke Plaintiff's membership should another incident occur where he was "verbally abusive towards any Costco employee." Plaintiff does not deny that he had a heated conversation with Defendant's employees about them banning his use of his mobility device (and only way he can use Costco), but he contends that Costco's employees were also acting and speaking inappropriately towards him.  Further, when Plaintiff attempted to renew his COSTCO membership in January of 2021, he was initially not permitted by Defendant to renew his membership, on information and belief in retaliation for Plaintiff asserting his rights under the ADA and in violation of it.  42 USC §12103; 28 CFR § 36.206.  Plaintiff did not receive his standard renewal letter in December or January.  Then, when he tried to renew his membership in person in January 2021 and then again in February 2021, he was told he was not allowed to renew his membership given a "note" in his file.  Plaintiff was also unable to renew his membership online at that time.  Plaintiff was ultimately able to renew his membership in April of 2021.  On information and belief, Defendant's refusal to renew of his membership was at least in part in retaliation for Plaintiff trying to enforce his right to use an OPDMD when he shops at Costco.

shopping area of the Warehouse; 3) the placement of kiosks, merchandise displays, and food demonstration carts in the aisles of the Warehouse; 4) the potential speed at which a Segway may be operated, and 5) speculation that Plaintiff might operate his device in an unsafe manner, e.g. "Costco has determined that the operation of a Segway inside the Warehouse poses an unreasonable risk to the health and safety of Warehouse patrons and employees and, possibly, even to your own health and safety" because Plaintiff might be a danger to himself or others "if you were to attempt to carry any goods with you while operating the Segway or if you were to try to push or pull a shopping cart at the same time you were driving the Segway." As discussed *infra* and below, the latter concern evidence's Costco's confusion about, and indifference to, differing models of Segway and differing needs of different persons with disabilities. The type of Segway that Plaintiff uses is hands-free and safe to use in combination with shopping carts, while other Segways, presumably the ones that Defendant references, require hand controls and are possibly not be safe for pushing carts while using them.

32.     Defendant did offer to provide an employee assistant to shop with Plaintiff, so long as he did not use his Segway miniPRO device, and subject to staffing and operational limitations.  As discussed above, this is not reasonable because Plaintiff is in pain when he sits in a standard upright position as required by the power carts that Costco provides. Plaintiff would not be assisted by Costco employees if he himself could not enter the store on his Segway miniPRO.  He could therefore not actually make use of an assistant.  Furthermore, to experience full and equal enjoyment of Costco, as the ADA requires, means Plaintiff must be allowed the ability to peruse and shop different items by looking at them personally, as any other shopper does.  A personal shopper is not a substitute for the shopping experience.

33.     Each of Defendant's alleged concerns could be addressed if Defendant had taken the time and effort to develop a sound Segway policy, or even to take Plaintiff's concerns seriously, as to particular disabilities and different forms of Segways.

34.     First, Defendant might have discovered and evidenced that certain times of day or certain days of the week are busier than others, justifying a policy that only allows a Segway miniPRO use on certain days or at certain times.  But they did not.

35.     Second forklifts are in use at Costco moving through the warehouse during business hours.  On information and belief it is standard operating procedure for one of Defendant's employee's to walk in front of a forklift to alert customers to move out of the way when it moves to a new area of the Warehouse.  Patrons are also alerted that a forklift is moving by a loud beeping noise which emanates from the forklift.  Defendant stretches credulity when it claims that it cannot accommodate a Segway miniPRO that weighs 28 lbs. when it has already developed a policy of safe travel for a multi-ton, large forklift through its allegedly "high trafficked" area of 8,600 patrons.  If Costco can make a forklift traveling through its warehouse safe for all its patrons, surely it can do so for a Segway miniPRO as well.  This is particularly so when Defendant has offered that an employee can assist Plaintiff with shopping, one who could easily also warn other pedestrians, if needed, to alert them to the  Segway miniPRO's presence.

36.     Third, on information and belief, Costco is a warehouse that offers wider than typical aisles compared with other retail and grocery stores. On information and belief, no aisle is so blocked by displays or kiosks that carts cannot be maneuvered past them.  Should Costco be concerned about its displays, or other shoppers, it could simply require Plaintiff to stay adjacent to or behind his cart, to minimize the chances of surprise to other guests.  Further, if it blocked paths of travel for any disabled person this itself would be a violation of State and federal disability access law.  It could also either require him to have an employee shop with him, as was already offered by Defendant. Instead, Defendant chose an ill-advised, blanket ban on all Segways over the work of developing a reasonable policy.  This lack of evidence based inquiry, and ban on all "Segways" without sufficiently considering specific models such as the Segway miniPRO, violated the ADA.

37.     **FACTS ABOUT PLAINTIFF'S OPDMD:**  Plaintiff uses a Segway miniPRO as his mobility device.  The device weighs 28 pounds.  At its tallest, the device can measure up to 34" in height; however, the height of the device is adjustable depending on the height of the user. The width of the Segway miniPRO at the wheel base (the widest point) is 21.4", and the diameter of the wheels is 10.3".  On information and belief the width of the Segway is less than the width of a "standard" Costco shopping cart.  The Segway miniPRO can travel up to 10 miles per hour,

but it can also easily stop, stand still, crawl along an inch at a time, or proceed at a walking pace.[4] http://www.segwayminipro.com/specifications/.  A photograph of Plaintiff's Segway miniPRO is seen above in paragraph 15, showing Plaintiff operating a hands-free Segway miniPRO while pushing a shopping cart with his hands.

38.     The Segway miniPRO is controlled by the operator shifting weight while squeezing the padded knee bar that is held between the users' legs.  Movements take little physical effort and the device is easy to control: lean forward to go forward, lean left to steer left, lean right to steer right, and stand up right to stop.  The operator of a Segway miniPRO can easily control how fast or slow they travel. Plaintiff is able to stop as immediately and quickly as any able-bodied person walking.

39.     The Segway miniPRO is not the same as other Segway models.  Other models use hand controls for balance and steering.  The Segway miniPRO does not.  Plaintiff is able to safely use the Segway miniPRO and may even receive additional balance and stability by using a shopping cart at the same time.  By contrast, when using hand controlled Segways, pushing a cart or reaching for items would require that the user to remove their hand from the steering control. This might cause the user to lose balance or control of those particular models of Segways.  The stock photo below on the left shows an example of man on a typical Segway PT model with hand controls (available at https://greatlakessegway.com/product/segway-i2-personal-transporter/). This model stands in sharp contrast with Plaintiff's model which allows him to hold a Costco cart while reaching for an item safely:

---

[4] As a point of reference, most power wheelchairs have a maximum speed of 4.5 to 8 miles per hour but are much larger and heavier than a Segway miniPRO. https://www.quantumrehab.com/resources/consumer-article-how-fast-do-motorized-wheelchairs-go.asp#:~:text=Most%20complex%20rehab%20power%20wheelchairs,has%20a%20maximum%20weight%20capacity.

1
2
3
4
5
6
7
8
9
10
11
12



13
14
See also photograph of Plaintiff pushing a Costco Cart with two hands in paragraph 15, which would be impossible with hand controlled Segway Models.

15      40.      **FACTS ABOUT PLAINTIFF'S USE OF HIS OPDMD:**  Plaintiff often goes
16 shopping at Costco and other stores near to his home.  When he shops at large stores like Costco,
17 Safeway, Home Depot, and Michaels, Plaintiff must use his Segway miniPRO in order to access
18 the store independently and experience full and equal enjoyment of those stores.  Generally, while
19 shopping by himself, Plaintiff stands on his Segway miniPRO and pushes a shopping cart in front
20 of him so that he can put items in the cart while holding onto it.  This gives him added balance
21 and control while using the Segway miniPRO, beyond manufacturer's stated requirements for the
22 device's operation, when he is using the cart.  When Plaintiff stands behind the cart, the shopping
23 cart's wheel base is wider than that of the Segway miniPRO.  There is therefore not more risk of
24 hitting other objects or persons than that presented by anyone pushing a cart. While shopping,
25 Plaintiff maintains a speed of 2 to 4 miles per hour, the average walking speed of an able bodied
26 person.  Since he started using the Segway miniPRO as a mobility device in 2017, Plaintiff has
27 logged over 900 miles on the device.  He has never had an accident or incident on his Segway
28

1   miniPRO while shopping at Costco.

2

3                           **FIRST CAUSE OF ACTION:**
    **VIOLATION OF TITLE OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
4   **FOR FAILURE TO MAKE REASONABLE MODIFICATIONS REGARDING OPDMD**
                   **DEVICES (42 USC §§ 12101 *et seq*.)**
5

6          41.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

7   the factual allegations contained in Paragraphs 1 through 40, above, and incorporates them herein

8   by reference as if separately repled hereafter.

9          42.     In 1990 Congress passed the Americans with Disabilities Act after finding that

10  laws were needed to more fully protect "some 43 million Americans with one or more physical or

11  mental disabilities; that historically society has tended to isolate and segregate individuals with

12  disabilities;" that "such forms of discrimination against individuals with disabilities continue to

13  be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals

14  with disabilities are to assure equality of opportunity, full participation, independent living and

15  economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and

16  unnecessary discrimination and prejudice denies people with disabilities the opportunity to

17  compete on an equal basis and to pursue those opportunities for which our free society is

18  justifiably famous."  42 U.S.C. § 12101(a).

19         43.     The ADA provides, "No individual shall be discriminated against on the basis of

20  disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

21  or accommodations of any place of public accommodation by any person who owns, leases, or

22  leases to, or operates a place of public accommodation." 42 USC § 12182.

23         44.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation

24  Act and in the Americans with Disabilities Act of 1990.

25         45.     Costco is a public accommodation within the meaning of Title III of the ADA.  42

26  U.S.C. § 12181(7)(F).

27         46.     The ADA prohibits, among other types of discrimination, "failure to make

28  reasonable modifications in policies, practices or procedures when such modifications are

                                            17

necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

47.    One of the reasonable modifications specifically contemplated by the Federal Regulations applies to the use of other power-driven mobility devices such as a Segway. Pursuant to 28 CFR section 36.311(b)(1),

> A public accommodation shall make reasonable modifications in its policies, practices, or procedures to permit the use of other power-driven mobility devices by individuals with mobility disabilities, unless the public accommodation can demonstrate that the class of other power-driven mobility devices *cannot* be operated in accordance with legitimate safety requirements that the public accommodation has adopted pursuant to § 36.301(b). (Emphasis added)

48.    "In determining whether a particular other power-driven mobility device can be allowed in a specific facility as a reasonable modification under paragraph (b)(1) of this section, a public accommodation shall consider" the following:

> (i)     The type, size, weight, dimensions, and speed of the device;
>
> (ii)    The facility´s volume of pedestrian traffic (which may vary at different times of the day, week, month, or year);
>
> (iii)   The facility´s design and operational characteristics (e.g., whether its business is conducted indoors, its square footage, the density and placement of stationary devices, and the availability of storage for the device, if requested by the user);
>
> (iv)    Whether legitimate safety requirements can be established to permit the safe operation of the other power-driven mobility device in the specific facility; and
>
> (v)     Whether the use of the other power-driven mobility device creates a substantial risk of serious harm to the immediate environment or natural or cultural resources, or poses a conflict with Federal land management laws and regulations.

28 CFR § 36.311(2).

49.    In denying Plaintiff's request for the accommodation to be allowed to operate his OPDMD within the Warehouse through its employees and its December 11, 2020, letter to Plaintiff, Defendant failed to make two different types modifications to their policies and procedures.  Each is an independent violation of the ADA.  First, Defendant failed to reasonably

modify their general policies and procedures to allow Segway miniPRO OPDMDs into its stores for persons with disabilities generally, including plaintiff, who use them as mobility aids.  This includes the failure to analyze and develop safety procedures that would allow the devices to be safely used by disabled persons.  Second, Defendant also failed to make a reasonable accommodation and specific exception for Plaintiff individually as to Defendant's blanket policy of banning all "Segways," even for those needed for use by persons with mobility disabilities. This is because unlike other persons with disabilities who potentially may be able to use different kinds of mobility devices in addition to Segways, such as a motorized wheelchairs, Plaintiff cannot do so.  Therefore, even assuming Defendant's ban on all "Segways" was lawful (which is a false assumption), Defendant still failed to make reasonable modifications of policy from that ban for Plaintiff specifically, and for other disabled persons like Plaintiff who have no choice but to use Segway miniPRO devices for mobility.

50.     In its December 11, 2020 letter, attached to this complaint as Exhibit 1, Defendant failed to consider several aspects of the factors outlined by DOJ regulations regarding permissible limitations of Segway miniPRO OPDMD use.  This includes a failure to consider that (i) Defendant does not discuss the type, size, weight, or dimensions of Plaintiff's OPDMD, (ii) they merely express concern at the "potential" speed at which the device could be operated. Defendant made no mention of the fact that an operator of the OPDMD, including Plaintiff, can operate the device at varying speeds such as normal walking pace or slower. (iii)  Although Defendant, without authority, states that the Santa Cruz Costco Warehouse "averages" 8,600 customers per day, they do not discuss what the number of shoppers might be inside the Warehouse at any given time and whether the number of shoppers varies depending on the day of the week and time day.  On information and belief, this precise information is readily available to Defendant because it tracks each sale to a corresponding membership card and the time and date of the purchase.  For example, in setting policies, Defendant should have assessed whether there were certain days and/or times that a person could operate a Segway miniPRO safely within the Warehouse but they did not.  Common sense indicates that the Warehouse is likely to be more crowded during certain days and times.  (iv) Defendant did not discuss the design of the

1  Warehouse including the square footage of the facility or the density and placement of *stationary*

2  devices such as shelving.  Defendant only stated that the use of forklifts and moveable displays

3  within the store could make Segway use hazardous.  However, such impediments to use would

4  also apply to use of all motorized wheelchairs.  Areas where forklifts are actually in use should be

5  closed to all patrons including those using OPDMDs for patrons' safety.  Further, the wheelbase

6  of Plaintiff's Segway miniPRO is less than the wheelbase of a shopping cart and of a standard

7  wheelchair. Therefore, any part of the store that is accessible to shopping cart or a wheelchair

8  (which should be anywhere the general public is allowed within the store) would be an easy fit for

9  Plaintiff's OPDMD.  (v) Defendant's letter made no mention of any potential safety requirements

10  that they considered putting in place for disabled patrons who use Segway miniPROs as

11  OPDMDs prior to banning the devices all together.  Placing certain safety requirements for users

12  of OPDMDs such as a maximum speed they may travel or only allowing the devices on certain

13  days and/or at certain times should be seriously considered before banning the device entirely.[5]

14       51.     Under the "Wheelchairs, Mobility Aids, and Other Power-Driven Mobility

15  Devices," as published by the United States Department of Justice in January of 2014, and

16  distributed by the DOJ's Civil Rights Division, Disability Rights Section, "When an OPDMD is

17  being used by a person with a mobility disability, different rules apply under the ADA than when

18  it is being used by a person without a disability."  https://www.ada.gov/opdmd.htm.   Further,

19  "People with disabilities have the right to choose whatever mobility devise best suits their

20  needs…someone who is able to stand may choose to use a Segway…"  *Id.*  Public

21  accommodations

22         must allow people with disabilities who may use any OPDMD to enter the premises

23         unless a particular type of device cannot be accommodated because of a legitimate safety requirements.  ***Such safety requirements must be based on actual risks, not***

24  ***on speculation or stereotypes about a particular type of device or how it might be operated by people with disabilities using them***.

25   

26  [5] "Whether the use of the other power-driven mobility device creates a substantial risk of serious harm to the immediate environment or natural or cultural resources, or poses a conflict with

27  Federal land management laws and regulations" is not relevant to the instant matter.  28 CFR § 36.301(b)(2)(v). To the extent it does, Defendant failed to analyze it and present reasons why the

28  Segway miniPRO is *substantial* risk of *serious* harm to the Warehouse environment.

1 | *Id* (Emphasis added).

2 |     52.     Defendant asserts it has a policy and practice of denying access to Costco stores to

3 | disabled patrons who use OPDMDs and specifically Segway miniPROs without properly

4 | considering the factors outlined in the Federal Regulations.  The lack of inquiry is especially

5 | egregious because, "Based on these assessment factors, the Department of Justice expects that

6 | devices such as Segways can be accommodated in most circumstances."

7 | https://www.ada.gov/opdmd.htm. The DOJ has found that this is particularly true in large stores

8 | with wide aisles, such as Costco warehouses:

> For some facilities -- such as a hospital, a shopping mall, ***a large home improvement store with wide aisles***, a public park, or an outdoor amusement park -- covered entities will likely determine that certain classes of OPDMDs being used by people with disabilities can be accommodated. ***These entities must allow people with disabilities using these types of OPDMDs into all areas where members of the public are allowed to go***.

13 | *Id.* (Emphasis added).

14 |     53.     On information and belief, as of the date of Plaintiff's visit to the Costco on or

15 | about December 8, 2020, Defendant continues to deny full and equal access to Plaintiff and to

16 | discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff

17 | the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

18 | accommodations of Defendant's premises, in violation of the ADA.

19 |     54.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"),

20 | Congress stated as its purpose:

>     It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

55.     As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which specifically includes but is not limited to, any "grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment." 42 USC § 12181(7)(E).

56.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges,

22

advantages, or accommodations available through alternative methods if such methods are readily

achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights

under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

57.     The removal of the policy barriers complained of by Plaintiff hereinabove were at

all times herein "readily achievable" to remove pursuant to the standards of sections 12181 and

12182 of the ADA.  In the event that removal of any barrier is found to be "not readily

achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to

provide all goods, services, privileges, advantages and accommodations through alternative

methods that were "readily achievable."

58.     On information and belief, as of the dates of Plaintiff's encounters at the premises

and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have

denied and continue to deny full and equal access to Plaintiff and to other disabled persons who

use OPDMDs, which violate Plaintiff's right to full and equal access and which discriminate

against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and

equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in

violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

59.     Defendant's actions continue to deny Plaintiff's rights to full and equal access by

deterring Plaintiff from patronizing this Costco or any Costco using a Segway miniPRO as an

assistive device. Defendant discriminated against Plaintiff, and continues to discriminate against

him on the basis of his disabilities.  This is because Plaintiff, with his particular disabilities,

cannot use Costco without his Segway miniPRO. Therefore denying him the use of his Segway

denies him access to Costco on the basis of his disability which requires use of that device for

ambulation.  Defendant is thus wrongfully denying to Plaintiff the full and equal enjoyment of

Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation

of section 12182 of the ADA by denying him use of the only mobility device that can allow him

to use the premises.  42 U.S.C. § 12182.

60.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,*

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

61.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize this Costco, in light of Defendant's policies and physical premises barriers.

62.    Finally, Defendant retaliated against Plaintiff for asserting his rights of the ADA by delaying renewal of his membership for several months after it expired.  It took multiple attempts in person and online to renew his membership.  On information and believe it did so as a direct result of Plaintiff's communications with Defendant prior to filing. 42 USC §12103; 28 CFR § 36.206.  Such December 11, 2020, letter from Costco's attorney also threatened to retaliate against Plaintiff by asserting its membership terms allowed it to "revoke a membership at any time with or without cause." Exhibit 1, p. 3 at ¶ 2.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

//

//

//

24

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
**CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES**
**ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)**

63.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 62 of this Complaint and incorporates them herein as if separately re-pleaded.

64.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

65.     California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

66.     Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

67.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

68.     The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use OPDMDs.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against

1    Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory,

2    compensatory and treble damages to Plaintiff, according to proof.

3        69.    Defendant, in engaging in the conduct set forth above, refused to do business with

4    Plaintiff and refused Plaintiff service.  Plaintiff alleges on information and belief that such refusal

5    and denial of service was due to Plaintiff's disability in violation of Civil Code § 51.5.

6        70.    **DAMAGES:**  As a result of the denial of equal access to Costco and due to the

7    acts and omissions of Defendant in owning, operating, and maintaining the subject property,

8    Plaintiff suffered multiple violations of his civil rights, including but not limited to rights under

9    Civil Code sections 51, 51.5 and 52, all to his damages per Civil Code section 52.  Defendant's

10   actions and omissions to act constitute discrimination against Plaintiff on the sole basis that he

11   was and is physically disabled and unable, because of the policy access barriers created and/or

12   maintained by Defendant in violation of the subject laws, to patronize the Costco while using his

13   mobility assistive device on a full and equal basis as other persons.

14       71.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct,

15   Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by

16   statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for

17   disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

18   seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the

19   provisions of California Civil Code sections 51, 51.5 and 52.  Additionally, Plaintiff's lawsuit is

20   intended to require that Defendant make its facilities and policies accessible to all disabled

21   members of the public, justifying "public interest" attorney fees, litigation expenses and costs

22   pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other

23   applicable law.

24       72.    Plaintiff suffered damages as above-described as a result of Defendant's

25   violations.

26           WHEREFORE, Plaintiff prays for relief as hereinafter stated.

27   //

28   //

**THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**
**CODE SECTIONS 51 AND 52 FOR**
**INTENTIONAL POLICY DISCIMINATION AND CONDUCT**

73.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 72 of this Complaint and incorporates them herein as if separately re-pleaded.

74.     Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 51, 51.5 and 52 or of Title III of the ADA (*see Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (2009)), Defendant's discriminatory behavior *was specifically intentional against Plaintiff* under state law.  Defendant is liable under California's Unruh Act, sections 51 and 52, independent of any alleged ADA violation, for its *intentional* conduct and policies that excluded Plaintiff on the basis of his disability and the mobility device essential for mobility. Plaintiff repeatedly made Defendant and its agents aware of their duties to refrain from establishing discriminatory policies and engaging in discriminatory practices against physically disabled persons who use Segway miniPRO mobility aids, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy, and failure to make any reasonable accommodation from it for Plaintiff, to specifically to deny and restrict entry to persons who use Segway miniPRO OPDMDs for mobility assistance was intentional, as evidenced by its agents conduct at the warehouse and its Chicago attorney's letter of December 11, 2020.  Exhibit 1.  The implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and his rights and safety.

75.     **TREBLE DAMAGES:**  Plaintiff has been damaged by Defendant's wrongful conduct and seeks the relief that is afforded by Civil Code sections 51, 51.5 and 52.  At all times herein mentioned, Defendant was fully aware that Plaintiff, and significant numbers of potential users of its public facilities, were, are and will be physically disabled persons, including mobility-impaired persons and those individuals who require the assistance of a mobility device, including Segway miniPRO OPDMDs, and would have need of facilities that complied with the standards and regulations under both the Americans with Disabilities Act and California law for accessible

1    facilities.

2          76.     Defendant had actual notice and knowledge of the relevant laws regarding

3    OPDMDs and their protections of Plaintiff.  Plaintiff specifically told Defendant's employees

4    about the ADA requirements, showed the text of ADA regulations to employees on his cell

5    phone, and explained that he could not use another mobility device.  Nonetheless, Defendant's

6    employees intentionally required him to leave the premises.  He also wrote to Defendant itself to

7    complain, but was met with the same attitude as the employees.

8          77.     Defendant's willful and intentional policy discrimination is evidenced by

9    Defendant's OPDMD policy itself and its apparent development.  Defendant failed to analyze all

10   of the relevant statutory factors and DOJ guidance before excluding Segway miniPRO OPDMDs,

11   despite actual knowledge of them as evidenced in their letter of December 11, 2020, just 3 days

12   after the alleged incident.  On information and belief it failed to consider *any* policy alternatives

13   other than an outright ban on all "Segways," including the Segway miniPRO, and thereby also

14   banning all disabled persons who use Segway miniPROs for mobility.  Defendant also

15   intentionally reasserted its discriminatory Segway OPDMD policy by ratifying its employees' ban

16   of Plaintiff's Segway miniPRO as company policy, effectively banning Plaintiff from all Costcos

17   entirely and forever.

18         78.     Defendant created and maintained the policy barriers complained of, and failed to

19   remove these barriers, including but not limited to those previously noted hereinabove, as

20   required by state and federal law.  Defendant has ignored Plaintiff's complaints about the lack of

21   proper policies for disabled access by Plaintiff and, on information and belief, other disabled

22   persons.  On information and belief it has done so to other disabled persons using Segway

23   miniPROs. Defendant has continued its illegal and discriminatory practices despite actual

24   knowledge that Plaintiff and other persons with physical mobility disabilities may attempt to

25   patronize the subject Costco and encounter illegal policy barriers regarding the use of OPDMDs

26   which deny them full and equal access when they do so.

27         79.     At all times herein mentioned, Defendant knew, or in the exercise of reasonable

28   diligence should have known, that their practices at the subject facilities violated disabled access

28

1  requirements and standards, and would have a discriminatory effect upon Plaintiff and upon other

2  disabled persons who use OPDMDs for mobility, but Defendant has failed to rectify the

3  violations. It presently continues a course of conduct of maintaining policy barriers that

4  discriminate against Plaintiff and similarly situated disabled persons.  For the foregoing reasons,

5  Plaintiff alleges that an award of statutory treble damages is appropriate, and prays for an award

6  of statutory attorneys' fees, costs, and injunctive relief.

7           WHEREFORE, Plaintiff prays for relief as hereinafter stated.

8

9                              **FOURTH CAUSE OF ACTION:**
                               **DAMAGES AND INJUNCTIVE RELIEF**
10  **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A**
                               **PUBLIC ACCOMMODATION**
11                              **(Civil Code §§ 54 *et seq.*)**

12          80.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the

13  factual allegations contained in Paragraphs 1 through 79 of this Complaint and all paragraphs of

14  the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

15          81.     Under the California Disabled Persons Act (CDPA), people with disabilities such

16  as Plaintiff are also protected against policy and architectural barrier discrimination by California

17  Civil Code §§ 54 and 54.1, the "Disabled Persons Act."  "Individuals with disabilities or medical

18  conditions have the same right as the general public to the full and free use of the streets,

19  highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics,

20  and physicians' offices, public facilities, and other public places."  Civil Code § 54(a).

21  Furthermore, "Individuals with disabilities shall be entitled to full and equal access, as other

22  members of the general public, to accommodations, advantages, facilities, . . . places of public

23  accommodation, amusement, or resort, and other places to which the general public is invited."

24  Civil Code § 54.1(a).  Additionally, any violation of the ADA, including but not limited to any

25  violation of sections 12182 and 12183, is also incorporated as a violation of the Disabled Persons

26  Act, by Civil Code sections 54(c), 54.1(d), and the Unruh Civil Rights Act, Civil Code section

27  51(f), as specified in the second cause of Action hereinabove.

28

82.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."

83.     The Costco Warehouse is a public accommodation within the meaning of the CDPA.  On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

84.     Defendant made the decision to knowingly and willfully, and with knowledge of his need for using his Segway miniPRO for mobility as a disabled person, to exclude Plaintiff from their public accommodation due to his reliance on his Segway miniPRO.  Defendant thereby denied Plaintiff his right of entrance into their place of business with his OPDMDs.  As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this large public accommodation and place of business based upon Defendant's illegal prohibition of his legally protected use of his OPDMD.  Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities.  Plaintiff is unable to return to the subject Costco Warehouse and effectively any Costco until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since December 8, 2020, all to his statutory damages pursuant to California Civil Code §§ 54.1 and 54.3.

85.     **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are physically disabled, including but not limited to mobility disabled individuals who require the use of OPDMDs, from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities and one who requires the assistance of an OPDMD.

86.     Plaintiff wishes to return to patronize the Costco Warehouse but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continues, to achieve equal access to and use of these public facilities.  Therefore, Plaintiff cannot return to patronize the Costco and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other mobility disabled persons and disabled individuals who require the assistance of an OPDMD.

87.     The acts of Defendant has proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.  Further, the Court should ban any form of retaliation against Plaintiff.

88.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

89.     **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant and each of them in owning, operating, leasing, constructing, altering, and maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and

31

1   emotional personal injuries, all to his damages per Civil Code section 54.3, including general and

2   statutory damages, and treble damages, as hereinafter stated.  Defendant's actions and omissions

3   to act constitute discrimination against Plaintiff on the basis that he was and is physically disabled

4   and unable, because of the policy barriers created and/or maintained by the Defendant in violation

5   of the subject laws, to use the public facilities on a full and equal basis as other persons.  The

6   violations have deterred Plaintiff from returning to patronize the Costco Warehouse and will

7   continue to cause him damages each day these barriers to access and policy barriers continue to

8   be present.

9           90.     **TREBLE DAMAGES:**  Plaintiff has been damaged by Defendant's wrongful

10  conduct and seeks the relief that is afforded by Civil Code sections 54, 54.1, and 54.3.  At all

11  times herein mentioned, Defendant were fully aware that significant numbers of potential users of

12  its public facilities were and are and will be physically disabled persons, including mobility-

13  impaired persons and those individuals who require the assistance of an OPDMD, and would

14  have need of facilities that complied with California and Federal standards for accessible

15  facilities.  Despite this knowledge, Defendant installed and maintained the policy barriers

16  complained of, and failed to remove these barriers, and have failed to provide and maintain

17  properly accessible facilities, including but not limited to those previously noted hereinabove, as

18  required by state and federal law.  On information and belief, Defendant has ignored complaints

19  about the lack of proper disabled access by Plaintiff and by other disabled persons.  Defendant

20  has continued its illegal and discriminatory practices despite actual knowledge that persons with

21  physical mobility disabilities may attempt to patronize the subject Costco and encounter illegal

22  policy barriers regarding disabled persons who use OPDMDs which deny them full and equal

23  access when they do so.

24          91.     At all times herein mentioned, Defendant knew, or in the exercise of reasonable

25  diligence should have known, that its practices at the subject facilities violated disabled access

26  requirements and standards, and would have a discriminatory effect upon Plaintiff and upon other

27  disabled persons who use OPDMDs for ambulation, but Defendant has failed to rectify the

28  violations, and presently continues a course of conduct of maintaining policy barriers that

32

1  discriminate against Plaintiff and similarly situated disabled persons.  Defendants intentionally

2  ejected Plaintiff from their Santa Cruz Warehouse by action of managerial employees and then

3  intentionally defended the decision and policy to ban OPDMD's after it was brought to

4  Defendant's attention by Plaintiff.  Such ratification of the acts of its managerial employees are

5  admissions made in the December 11, 2020, letter from Defendant's attorney to Plaintiff.  See

6  Exhibit 1.  For the foregoing reasons, Plaintiff alleges that an award of statutory treble damages is

7  appropriate.

8        92.    Further, although it is not necessary for Plaintiff to prove wrongful intent in order

9  to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see*

10  *Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional.

11  Defendant was aware and/or was made aware of its duties to refrain from establishing

12  discriminatory policies against physically disabled persons, prior to the filing of this complaint.

13  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons who

14  use OPDMDs, including "Segways," and its implementation of such a discriminatory policy

15  against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for

16  his rights and safety.

17        93.    **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct,

18  Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by

19  statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

20  for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

21  seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the

22  provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

23  require that Defendant make its facilities and policies accessible to all disabled members of the

24  public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the

25  provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

26        94.    Plaintiff suffered damages as above described as a result of Defendant's violations.

27  Damages are ongoing based on his deterrence from returning to the Costco Warehouse.

28        WHEREFORE, Plaintiff prays for relief as hereinafter stated.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1

### PRAYER

2          Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

3    Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

4    unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless

5    Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and

6    opposing legal positions as to Defendant's violations of the laws of the United States and the

7    State of California. The need for relief is critical because the rights at issue are paramount under

8    the laws of the United States and the State of California.

9          WHEREFORE, Plaintiff John Pennington prays for judgment and the following specific

10   relief against Defendant:

11          1.    An order enjoining Defendant, its agents, officials, employees, and all persons

12   acting in concert with them:

13              a.  From continuing the unlawful acts, conditions, and practices described in this

14                  Complaint;

15              b.  To modify their policies and practices to accommodate disabled users of Segway

16                  miniPRO OPDMDs, in conformity with federal and state law, to advise Plaintiff

17                  that he will not be excluded should he desire to enter and use the services of

18                  Costco with his Segway miniPRO either without specific restrictions if the Court

19                  finds so appropriate, or alternatively to address any legitimate and lawful safety

20                  concerns by modifications of policy. For example 1) the Court may find imposing

21                  a speed limit on how fast Segway miniPRO OPDMD users can travel within

22                  Defendant's Warehouses, and/or 2) require that Segway miniPRO users stay

23                  adjacent to their carts while shopping so that they have the same pedestrian traffic

24                  footprint as other Costco shoppers, and additionally, if appropriate, 3) requiring

25                  Defendants to provide employee assistance with shopping.

26              c.  That the Court issue preliminary and permanent injunction directing Defendant as

27                  current owners, operators, lessors, and/or lessees and/or their agents of the subject

28                  property and premises to modify the above described property, premises, policies

34

1  and related policies and practices to provide full and equal access to all persons,

2  including persons with physical disabilities; and issue a preliminary and permanent

3  injunction pursuant to ADA section 12188(a), ADA regulations, and state law

4  directing Defendant to provide facilities usable by Plaintiff and similarly situated

5  persons with disabilities, and which provide full and equal access, as required by

6  law, and to maintain such accessible facilities once they are provided and to train

7  Defendant's employees and agents in how to recognize disabled persons and

8  accommodate their rights and needs;

9      d.  An order retaining jurisdiction of this case until Defendant has fully complied with

10  the orders of this Court, and there is a reasonable assurance that Defendant will

11  continue to comply in the future absent continuing jurisdiction;

12  2.    An award to Plaintiff of statutory, actual, general, treble, and punitive damages in

13  amounts within the jurisdiction of the Court, all according to proof;

14  3.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California

15  Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise

16  permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

17  4.    An award of prejudgment interest pursuant to Civil Code § 3291;

18  5.    Interest on monetary awards as permitted by law; and

19  6.    Grant such other and further relief as this Court may deem just and proper.

20  Date: May 12, 2021                            REIN & CLEFTON

21
22                                    */s/ Aaron M. Clefton*
                                By AARON M. CLEFTON, Esq.

23                                  Attorneys for Plaintiff
                                JOHN PENNINGTON

24  //

25  //

26  //

27  //

28  //

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: May 12, 2021                         REIN & CLEFTON

                                           ___*/s/ Aaron M. Clefton*___
                                           By AARON M. CLEFTON, Esq.
                                           Attorneys for Plaintiff
                                           JOHN PENNINGTON

36